IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

NEIL F. MILLER,

                Plaintiff,               OPINION AND ORDER

      v.                            14-cv-595-bbc

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                Defendant.

---

       Plaintiff Neil Miller is seeking review of a final decision by defendant Carolyn W. Colvin, Acting Commissioner of Social Security, denying his claim for disability insurance benefits and supplemental security income under the Social Security Act. 42 U.S.C. § 405(g). The administrative law judge who decided the case concluded that plaintiff suffered from the severe impairments of degenerative disc disease of the lumbar spine with past fusion and hemilaminectomy, seizure disorder, chronic pain syndrome and anxiety disorder but retained the residual functional capacity to perform limited light work with brief position changes every 30 minutes, no more than occasional foot controls, bending, twisting, stooping, kneeling, crouching crawling or climbing, and no work at unprotected heights or near hazards. In addition, the administrative law judge limited plaintiff to work that was routine, repetitive, simple and low stress (meaning no high production standards) and that required no more than brief and superficial contacts with others.

In his petition for judicial review, plaintiff asks this court to reverse the decision and remand it to the commissioner on the ground that the administrative law judge committed a number of errors in determining plaintiff's residual functional capacity.  He contends that the administrative law judge failed to properly weigh the medical opinions in the record, failed to build an accurate and logical bridge between the evidence and his ultimate residual functional capacity finding and improperly evaluated his credibility.

Because I find that the administrative law judge did not build an accurate and logical bridge between the evidence and her residual functional capacity assessment, I am granting plaintiff's motion for summary judgment and remanding this case for further proceedings.

The following facts are drawn from the administrative record (AR).

## RECORD FACTS

### I.  BACKGROUND AND MEDICAL EVIDENCE

Plaintiff applied for Supplemental Security Income and Disability Insurance Benefits on February 10, 2009.  After the social security administration denied his application initially and on reconsideration, plaintiff asked that his claim be heard by an administrative law judge.  A hearing was held on March 13, 2013, at which plaintiff and a vocational expert testified.

Plaintiff was born on January 3, 1978, making him 31 years old at the time he applied for benefits.  He had past work experience as a heavy equipment operator, cleaner and

restaurant worker.  He alleged that he had been disabled since February 1, 2003 because of back pain and seizures.

Plaintiff has a long-standing history of back pain; he had a lumbar laminectomy in 2001.  For the next eight years, he was relatively asymptomatic apart from some acute exacerbations of pain and right-sided numbness in 2004, 2006 and 2008.  In late 2009, he reported that his symptoms had worsened and he had leg and right buttock pain as well as some erectile dysfunction.  After consulting with a neurosurgeon, Dr. Marshall Watson, plaintiff underwent fusion of the L5-S1 joint in March 2010.

When seen for a followup appointment in May, plaintiff reported having attempted to return to work as a heavy equipment operator but was unable to do so because his legs were too weak.  Dr. Watson, the treating neurosurgeon, noted that plaintiff had good lower extremity strength and sensation and that he was making slow and steady progress after his surgery, but it was too early for him to attempt any significant physical labor.  Dr. Watson recommended physical therapy to strengthen plaintiff's back and legs.

Plaintiff did not see Dr. Watson again until September 1, 2010, having missed three appointments.  He reported that he had not attended physical therapy for financial reasons.  He was doing reasonably well but he still had some back pain and episodic pain down his right leg.  At a follow up two months later, plaintiff said he had been doing reasonably well until the weather changed, at which point he began having severe pain down his right leg into his foot.  Plaintiff had 5/5 lower extremity strength but some decreased light touch in

3

the lateral aspect of his foot.  Dr. Watson ordered a myelogram, which showed that the hardware was in a reasonable position and there was no significant compression of any of the involved nerve roots, although there was slight bulging at the L4-L5 disc above the fusion.

On December 8, 2010, plaintiff reported that he continued to have episodes of back pain, although his back did not "lock up" the way it had before the surgery.  Dr. Watson again emphasized the importance of physical therapy and told plaintiff to follow up as needed.

Plaintiff saw Dr. Watson again on April 20, 2011, complaining of increased pain in his back and right leg, though the pain was still better than it was before surgery.  Plaintiff told Watson that he was pursuing Social Security disability and that a form had been faxed to Watson's office. Watson noted that plaintiff had good lower extremity strength but some decreased light touch in a right S1 distribution.  (The record does not show that Watson completed any form on plaintiff's behalf at that time.)

Plaintiff saw Dr. Watson again on October 26, 2011.  Watson wrote that plaintiff "[e]ssentially is here for disability papers," reporting that he continued to have back and leg pain and had good days and bad days.  He could not attend physical therapy because of the cost.  Watson noted that plaintiff appeared reasonably comfortable, although he shifted in his chair frequently.  On examination, he showed good lower extremity strength and sensation.  Dr. Watson diagnosed degenerative joint disease of the lumbosacral spine and

4

ordered x-rays.  Two days later, Watson completed a residual functional capacity questionnaire, which is discussed below.

At a visit with Dr. Watson on December 5, 2011, plaintiff reported that his back pain was worse with the cold weather.  Watson noted that plaintiff was awake, alert and comfortable and his lumbar xrays "look good."  Watson ordered an MRI to evaluate the other discs in plaintiff's back.

On January 26, 2012, plaintiff presented to the emergency room, complaining that he had experienced sharp sudden pain in his back and buttocks after reaching around to get some toilet paper while sitting on the toilet.  Plaintiff reported that his back had gone into spasm and he was in severe pain.  He was treated with medications and released.  Four days later, plaintiff returned to the urgent care clinic, reporting that his back was still "locking up" and he had pain in both legs but he was out of his medications.  Plaintiff was noted to appear very uncomfortable.  He had fairly normal strength and sensation in his left leg but decreased sensation on the outside of the right foot.  His diagnosis was an exacerbation of lumbar radiculopathy.

Sometime in 2012, plaintiff began seeing Dr. Jacob Oestreich, a primary care physician.  Dr. Oestreich saw plaintiff on a monthly basis, primarily for the purpose of refilling his medications, which consisted of Lortab (a combination of hydrocodone and acetaminophen) and Tramadol (a narcotic-like pain reliever).

On October 11, 2012, plaintiff was evaluated by neurologist Edgardo Crisostomo, M.D., after having what was thought to be a seizure.  On examination, plaintiff was found to have normal motor function, normal and symmetrical reflexes in the arms and legs, normal tone and unremarkable gait and station.  An EEG showed abnormal brain activity consistent with a seizure disorder.

Dr. Oestreich's office notes from 2012 generally show that plaintiff was doing well overall and that the medications allowed plaintiff to be "out and about and functional at a level that's acceptable and necessary for him."  On December 3, 2012, Dr. Oestreich noted that plaintiff's seizures were stable on Depakote and that he had not had any further seizure activity.

## II.  ADMINISTRATIVE LAW JUDGE'S DECISION

On April 1, 2013, the administrative law judge issued a decision finding plaintiff not disabled.  Applying the familiar five-step process for deciding disability claims, 20 C.F.R. §§ 404.1520(a) and 416.920(a), she found at steps one through three that plaintiff had not engaged in substantial gainful activity since February 1, 2003, his alleged onset date (step one); plaintiff had the severe impairments of degenerative disc disease of the lumbar spine with past fusion and hemilaminectomy; seizure disorder; chronic pain syndrome; and anxiety disorder (step two); and that none of plaintiff's impairments was severe enough either singly or in combination to meet or medically equal the requirements of any listing contained in

6

20 C.F.R. Part 404, Subpart P, Appendix 1 (step three). Accordingly, the administrative law judge proceeded to evaluate plaintiff's residual functional capacity.

The record before the administrative law judge included two medical opinions concerning plaintiff's residual functional capacity. The first was a form completed by Dr. Watson, plaintiff's treating neurosurgeon, on October 28, 2011. Dr. Watson wrote that plaintiff could lift up to 10 pounds frequently and up to 20 pounds occasionally, sit and stand for 30 minutes at one time and walk for 20 minutes at one time, but in an eight-hour work day could stand for 90 minutes and walk for 30 minutes total, sit for six hours, could reach only occasionally and could never climb, balance, stoop, kneel, crouch, crawl or work at unprotected heights. Watson also wrote that plaintiff needed to be able to lie down for two hours of an eight-hour day. The vocational expert testified that an individual who was limited to occasional reaching could not perform any of the jobs he had identified and that a person who had to lie down for two hours a day could not work at any job.

The second opinion concerning plaintiff's physical limitations was a form completed on May 11, 2011 by Dr. Chan, a consultant for the state disability agency. Like Dr. Watson, Chan concluded that plaintiff could sit for up to six hours a day and could stand or walk for at least two hours a day. However, Chan concluded that plaintiff could lift only 10 pounds, as opposed to 20 pounds, as Watson found. Further, Chan did not see any reason for restrictions on reaching or postural activities such as bending, kneeling and stooping and he did not indicate that plaintiff would need to lie down for two hours a day.

Overall, it was Chan's opinion that plaintiff could perform sedentary work. (No one asked the vocational expert whether any jobs would have been available to plaintiff if he had the restrictions identified by Chan.)

The administrative law judge concluded that plaintiff had the residual functional capacity to perform light work (defined as lifting up to 20 pounds occasionally and 10 pounds frequently and standing and walking up to six hours and sitting up to two hours in an eight-hour workday). In addition, the administrative law judge concluded that plaintiff would not be able to maintain a job unless it

- permitted him to change position briefly every 30 minutes;

- did not require more than occasional use of foot controls, bending, twisting, stooping, kneeling, crouching, crawling or climbing;

- did not require work at unprotected heights or near hazards;

- was limited to routine, repetitive and simple work;

- did not require more than brief and superficial contacts with others; and

- was low stress, defined as no high production standards.

In arriving at the residual functional capacity detailed above, the administrative law judge stated that she was giving "some weight" to Dr. Watson's conclusions and "little weight" to Chan's conclusions. The administrative law judge explained that Dr. Watson's limitations of lifting 20 pounds occasionally and 10 pounds frequently as well as a change of position after 30 minutes were consistent with the degenerative disc disease that Watson

8

had diagnosed.  She found, however, that "limitations on walking and standing are not supported by the generally normal physical exams showing full strength in the lower extremities."  AR 33.  In addition, she rejected Watson's opinion concerning plaintiff's need to lie down and his limitations on reaching and other postural activities, finding that Dr. Watson did not provide any rationale for these limitations and there was no evidence that he ever examined plaintiff's upper extremities.

As for Dr. Chan's opinion that plaintiff was limited to sedentary work, the administrative law judge cited three reasons for rejecting his opinion:  1) the lack of consistent objective findings in the record to support "limiting the claimant as drastically as [Chan] indicated in his report;" 2) Chan appeared to have given great weight to plaintiff's subjective reports as stated in his function report, rather than considering objective findings; and 3) plaintiff's activities during the applicable time period were not consistent with the limitations Chan found.

At step four, the administrative law judge determined that plaintiff's residual functional capacity prevented him from performing any of his past relevant work. Accordingly, she went on to consider whether, in light of plaintiff's age, education, work experience and residual functional capacity, he could make a vocational adjustment to work existing in significant numbers in the national or regional economy.  Relying on the testimony of the vocational expert at the hearing, the administrative law judge found that plaintiff would be able to perform the jobs of parking lot attendant/cashier, warehouse

9

checker and bagger and that such jobs existed in significant numbers in the state of Minnesota.

Plaintiff asked the Appeals Council to review his claim but it declined, making the administrative law judge's decision the final decision of the Commissioner.


OPINION

I.  STANDARD OF REVIEW

When a federal court reviews a final decision by the Commissioner of Social Security, the Commissioner's findings of fact are "conclusive" so long as they are supported by "substantial evidence." 42 U.S.C. § 405(g). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). The reviewing court cannot reconsider facts, re-weigh the evidence, decide questions of credibility or otherwise substitute its own judgment for that of the ALJ.  Clifford v. Apfel, 227 F.3d 863, 869 (7th Cir. 2000). However, a reviewing "court must conduct a critical review of the evidence before affirming the [C]ommissioner's decision, and the decision cannot stand if it lacks evidentiary support or is so poorly articulated as to prevent meaningful review."  Hemminger v. Astrue, 590 F. Supp. 2d 1073, 1079 (W.D. Wis. 2008) (internal citations omitted). To provide the necessary support for a decision to deny benefits, the ALJ must "build an accurate and logical

bridge from the evidence to [his] conclusion." Zurawski v. Halter, 245 F.3d 881, 887 (7th Cir. 2001).

## II.  PHYSICAL RESIDUAL FUNCTIONAL CAPACITY

In performing the analysis for Step Four, the administrative law judge determines whether the claimant's residual functional capacity allows the claimant to return to past relevant work.  Residual functional capacity is a measure of the abilities the claimant retains despite his or her impairments.  20 C.F.R. §§ 404.1545(a); 416.945(a).  In assessing a claimant's residual functional capacity, an administrative law judge is not limited to medical opinions but may consider all of the relevant evidence.  This includes objective medical evidence, treatment, physicians' opinions and observations and the claimant's own statements about his limitations.  20 C.F.R. §§ 404.1545(a); 416.945(a).  Thus, although medical source opinions about a plaintiff's residual functional capacity must be considered, they are not controlling.

Plaintiff argues that the administrative law judge's residual functional capacity finding is not supported by substantial evidence.  First, he argues that the administrative law judge failed to properly weigh the medical opinions in accordance with SSA regulations.  According to plaintiff, the administrative law judge violated the rule against "playing doctor" by drawing her own conclusions about the objective medical evidence rather than leaving it to the medical professionals.  Second, he contends that, even assuming the administrative law

judge properly rejected Dr. Watson and Dr. Chan's opinions, she still failed to give an adequate explanation for some of her conclusions regarding plaintiff's residual functional capacity.   In particular, plaintiff argues that there is no clear evidentiary basis for the administrative law judge's conclusions that plaintiff was able to be on his feet for up to six hours a day provided he was allowed a "brief change of position" and that he was able to perform postural maneuvers such as crawling, stooping and kneeling occasionally, meaning up to one-third of the day.

It is a well-settled rule that a treating physician's medical opinion is entitled to controlling weight if it is supported by objective medical evidence and consistent with other substantial evidence in the record.  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  Roddy v. Astrue, 705 F.3d 631, 636 (7th Cir. 2013); Skarbek v. Barnhart, 390 F.3d 500, 503 (7th Cir. 2004).  Although an administrative law judge is not required to afford a treating physician's opinion controlling weight, she is required to provide a sound explanation for rejecting it.  Roddy, 705 F.3d at 636.  See also Beardsley v. Colvin, 758 F.3d 834, 839 (7th Cir. 2014) ("The problem in this case is that the ALJ did not provide a valid explanation for preferring the record reviewer's analysis over that of the agency's examining doctor."). Further, "[i]f an ALJ does not give a treating physician's opinion controlling weight, the regulations require the ALJ to consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion" in determining

12

the weight to give the opinion.  See Moss v. Astrue, 555 F.3d 556, 561 (7th Cir. 2009); 20 C.F.R. §§ 404.1527(d)(2); 416.927(d).  With respect to non-examining sources, administrative law judges are required to consider their opinions and evaluate them in accordance with the same criteria that apply to treating source opinions.  20 C.F.R. §§ 404.1527(e); 416.927(e).

With respect to the walking and standing limitations, the commissioner argues that it was reasonable for the administrative law judge to rely on the physical examinations by Drs. Watson, Oestreich and Crisostomo as a basis for rejecting Dr. Watson and Dr. Chan's conclusion that plaintiff was limited to two hours of standing or walking daily.  These examinations generally showed that plaintiff had normal strength in his lower extremities and no neurological abnormalities.  Plaintiff responds that the administrative law judge "played doctor," drawing her own conclusions about the medical evidence, when she assumed that lower extremity weakness and abnormal neurological findings had to be present in order to credit the opinions plaintiff was limited in his ability to walk and stand,

Although it is true that administrative law judges must resist the urge to make medical determinations, they are permitted to weigh the evidence and make reasonable inferences from the record.  Young v. Barnhart, 362 F.3d 995, 1001 (7th Cir. 2004); Blakes ex rel. Wolfe v. Barnhart, 331 F.3d 565, 570 (7th Cir. 2003).  Drawing that line is often a difficult task, and this case is no exception.  On the one hand, it seems reasonable for the administrative law judge to question the soundness of Dr. Watson and Dr. Chan's opinions

13

that plaintiff would have problems with prolonged walking and standing given the absence of any objective findings indicating that plaintiff had weakness or numbness in his legs and the generally unremarkable examinations by other providers.  (Although plaintiff points to a few records showing some leg weakness and other positive findings, I agree with defendant that overall, plaintiff's post-surgery examinations were largely unremarkable apart from some isolated flare-ups.)  On the other hand, plaintiff does have documented problems with his lower back:  he has degenerative disc disease, has had two surgeries on his lumbar spine requiring the placement of hardware in his back and his back can lock up even when he performs ordinary activities such as reaching for a roll of toilet paper.  In addition, he has a diagnosis of chronic pain syndrome and takes relatively strong medication on a daily basis.

What is more, no other physician who examined plaintiff or reviewed his records offered an opinion about his ability to walk and stand that supports the administrative law judge's conclusion that plaintiff was not as limited in walking or standing as Drs. Watson and Chan had found.  To the contrary, the only two physicians who evaluated plaintiff's residual functional capacity were Watson and Chan, who agreed that plaintiff was limited in the amount of standing or walking he could do.  The administrative law judge did not acknowledge this consistency in her opinion, even though it is one of the regulatory factors and arguably supports giving greater weight to both opinions.  See 20 C.F.R. §§ 404.1527(d)(2), 416.927(d) (in deciding weight to be afforded medical opinion, administrative law judge must consider the length, nature and extent of the treatment

14

relationship, frequency of examination, the physician's specialty, the types of tests performed and the consistency and supportability of the physician's opinion).

Given these facts, I am persuaded that this is a case where the administrative law judge crossed the line between permissible inferences and impermissible medical opinions. As the court of appeals has cautioned, "[c]ommon sense can mislead; lay intuitions about medical phenomena are often wrong." Schmidt v. Sullivan, 914 F.2d 117, 118 (7th Cir. 1990). Here, both plaintiff's treating neurosurgeon and a non-examining medical expert concluded that plaintiff was restricted in his ability to walk and stand notwithstanding his generally normal lower extremity strength and neurological findings. Where the only two medical opinions of record are in agreement, the administrative law judge should have had some strong evidence on which to rely before rejecting those opinions and finding that plaintiff had a greater capacity for work. Her own opinion that the doctors' opinions are unsupported by the objective medical evidence is not enough. Barrett v. Barnhart, 355 F.3d 1065, 1067 (7th Cir. 2004) (ALJ's conclusion that claimant could stand for two hours was not supported by the medical evidence because "[t]he only physician who specified limitations had advised that [plaintiff] could stand for up to six hours at a time, but he had not known about the problem with her knees.").

This does not mean that the administrative law judge was required to accept Dr. Watson or Dr. Chan's opinions without question. If the administrative law judge thought neither opinion well-supported or contradicted by later evidence introduced into the record,

she could have called a consulting expert to testify.  Alternatively, she could have asked Dr. Watson for a new evaluation.  Having opted not to do so, however, the administrative law judge could not simply rely on her own understanding of the medical evidence as a basis for her conclusions about plaintiff's residual functional capacity.

I agree with plaintiff that the administrative law judge also failed to build an accurate and logical bridge between the evidence and her conclusion about his ability to perform postural maneuvers such as climbing, balancing, stooping, kneeling, crouching or crawling. Dr. Watson found that plaintiff could never perform these maneuvers, whereas Dr. Chan found plaintiff to have no limitations in these areas.  The administrative law judge found that plaintiff could "occasionally" perform these maneuvers, but how she arrived at this conclusion is impossible to discern from her decision.

The commissioner insists that plaintiff's reported activities provide the missing support for the administrative law judge's conclusions about plaintiff's ability to walk, stand and perform postural maneuvers, but her arguments are not convincing.  The administrative law judge's discussion of plaintiff's activities reads as follows:

> [T]he claimant's ongoing activities are consistent with the ability to perform work within the residual functional capacity defined above.  He lives independently and does not drive because he lost his license secondary to child support issues.  The claimant's parents pay the rent for him.  He is able to go grocery shopping with his parents and cook independently.  The claimant indicated he used to do laundry but no longer does so, for unclear reasons.  He indicated he can straighten up the house, wash dishes, have his kids over on the weekends when they cook together, watch movies, play video games, and design things with Legos.  He also tries to read, watches television, plays the

16

guitar, and does some sketching.  There were also references in the medical records to skinning a deer and painting during the applicable time period.

AR 33 (citations omitted).

This discussion is deficient because the administrative law judge never says *why* plaintiff's activities are consistent with the administrative law judge's conclusions about plaintiff's residual functional capacity. Jelinek v. Astrue, 662 F.3d 805, 812 (7th Cir. 2011) ("[An ALJ] must explain perceived inconsistencies between a claimant's activities and the medical evidence.").  As the Court of Appeals for the Seventh Circuit has cautioned on numerous occasions, the mere fact that a plaintiff is able to perform personal activities of daily living does not prove that he can perform a job on a regular basis, much less a job requiring up to six hours of standing or walking.  See Bjornson v. Astrue, 671 F.3d at 647 ("The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . . and is not held to a minimum standard of performance, as she would be by an employer."); Punzio v. Astrue, 630 F.3d 704, 712 (7th Cir. 2011) ("[The claimant's] ability to struggle through the activities of daily living does not mean that [the claimant] can manage the requirements of a modern workplace."); Mendez v. Barnhart, 439 F.3d 360, 362 (7th Cir. 2006) ("The pressures, the nature of the work, flexibility in the use of time, and other aspects of the working environment as well, often differ dramatically between home and office or factory or other place of paid work.").  It is not clear how the administrative law judge concluded from plaintiff's ability to manage a few personal daily and weekly chores

17

and to read and watch television that he was able to be on his feet for a total of six hours a day, five days a week, or to perform postural maneuvers occasionally.

The commissioner argues that plaintiff's activities of skinning a deer and painting his house were sufficient to support the administrative law judge's conclusion. To be sure, if these more strenuous activities were performed on a regular basis, they would be a good reason for the administrative law judge to find that plaintiff had a relatively non-restrictive residual functional capacity. However, there is no evidence that plaintiff hunts or skins deer or paints on a regular basis. (At the hearing, plaintiff stated that he had not gone hunting for years. He was not asked about painting.) Merely referring to isolated activities in passing without analyzing what those activities mean in terms of the claimant's credibility or functional capacity is not enough to satisfy the minimal articulation requirement. Hamilton v. Colvin, 525 F. App'x 433, 438 (7th Cir. May 3, 2013) (administrative law judge's reference to plaintiff's "isolated recreational event" of driving to Kentucky insufficient to establish that plaintiff could sit for more than 20 minutes at a time on a regular basis) (unpublished opinion). But see McElroy v. Apfel, No. 97 C 6585, 1999 WL 199617, at *6 (N.D. Ill. Apr. 2, 1999) (ALJ properly rejected opinion of non-treating physician that plaintiff could lift no more than five pounds where administrative law judge specifically asked plaintiff at hearing how much he could lift and plaintiff testified repeatedly that he could lift more than five pounds).

18

The commissioner also points out that Dr. Oestreich stated on several occasions that plaintiff was able to function at an acceptable level and that his medications allowed him to be "out and about."  Such vague boilerplate statements, however, do not say much about plaintiff's ability to walk or stand for six hours or perform postural maneuvers such as bending.  As the court of appeals has noted with respect to analogous remarks about a patient's "improvement," "[t]he key is not whether one has improved (although that is important), but whether they have improved enough to meet the legal criteria of not being classified as disabled."  Murphy v. Colvin, 759 F.3d 811, 819 (7th Cir. 2014).  It may be the case that for Dr. Oestreich, "acceptable" means that plaintiff can perform a few tasks around the house and "out and about" means he can go to the grocery store. Without a reference point, Oestreich's statements are simply not informative as to plaintiff's activities or his capacity for light work.

In sum, none of the medical evidence or activities cited by the administrative law judge supports her determination that plaintiff is able to walk or stand six hours of an eight-hour workday with brief position changes or perform occasional postural maneuvers. Accordingly, this case must be remanded for a new determination of plaintiff's residual functional capacity.  In doing so, the administrative law judge should re-evaluate the medical opinions in accordance with the commissioner's regulations, taking care to apply the factors noted above for weighing medical opinions.  If the administrative law judge decides again to make a residual functional capacity assessment that differs from that of the medical

19

sources, she must explain the basis for her conclusions and make sure they are firmly grounded in the evidence.

I note that plaintiff raises additional objections to the administrative law judge's evaluation of Dr. Watson's opinion, arguing that she failed to cite good reasons for rejecting his opinion that plaintiff needed to lie down for two hours a day, could not operate foot controls and could not perform reaching. However, as the administrative law judge correctly noted and as plaintiff appears to concede, Dr. Watson did not provide any rationale for these limitations and none is obvious from his medical records; in fact, there is no indication that he ever examined plaintiff's arms to determine whether plaintiff had any problems with reaching. Furthermore, Dr. Chan did not find that plaintiff had any of these limitations. Accordingly, I am not particularly troubled by the administrative law judge's decision to reject these aspects of Dr. Watson's opinion. Nonetheless, on remand, the administrative law judge should re-consider all of Dr. Watson's opinions and explain the weight given to each of them in accordance with the regulations.

Finally, there is one additional issue not flagged by either party. The administrative law judge mentioned evidence that plaintiff had engaged in work activity after his alleged disability date. In particular, she cited a September 2006 urgent care note in which plaintiff was noted to have a job where he worked around crude oil (AR 354) and another from March 2008 in which he was noted to have a job that required him to lift 50 pounds (AR 369). Indeed, as the administrative law judge pointed out, other than some emergency room

visits, there is little evidence that plaintiff was having any serious problems with his back until late 2009, when he was referred to Dr. Watson.

Even though the evidence suggests that the earliest plaintiff could have been disabled was in late 2009, the administrative law judge did not make separate findings for the pre- and post-2009 periods. Instead, she determined plaintiff's residual functional capacity for the entire 10-year period under adjudication. On remand, the administrative law judge may wish to consider separating the period under consideration into different time frames to account for the changes in plaintiff's condition and activities.

For the sake of completeness, and to help guide the commissioner on remand, I briefly address plaintiff's remaining objections.

### III. MENTAL RESIDUAL FUNCTIONAL CAPACITY

Plaintiff argues that the administrative law judge "played doctor" when she assigned mental limitations to account for plaintiff's anxiety disorder that were not supported by any medical opinion of record. Although a state agency psychologist provided a mental residual functional capacity assessment concluding that plaintiff's only mental impairment was non-severe substance abuse, the administrative law judge disregarded it because of evidence that showed that plaintiff developed anxiety after the psychologist reviewed the record. Plaintiff does not challenge the administrative law judge's decision to disregard the psychologist's

opinion, but argues that once she did so, she could not draw any conclusions about plaintiff's mental abilities without a new expert evaluation or opinion.

Although I agree that this appears to be another case of the administrative law judge playing doctor, in this instance it is unclear how plaintiff was harmed by it. In spite of minimal evidence showing that plaintiff complained of or was treated for anxiety or any other psychological impairment, the administrative law judge included a number of mental limitations in her residual functional capacity assessment, namely, that plaintiff be limited to work that was routine, repetitive and simple, did not require more than brief and superficial contacts with others and was low stress, defined as no high production standards. Plaintiff fails to point to any evidence in the record suggesting that his anxiety imposes greater limitations than these. Accordingly, there is no reason to remand the decision on this ground.

## IV.  CREDIBILITY

In assessing the credibility of plaintiff's subjective complaints, the administrative law judge found it credible that plaintiff would have difficulty with prolonged periods of standing or walking, heavy lifting and complex or highly stressful work. In addition, although plaintiff did not allege difficulties in social functioning, she gave plaintiff "the benefit of the doubt" and included such limitations in her residual functional capacity assessment. However, she rejected plaintiff's allegations that he could not lift more than a half gallon of milk, had to

nap twice a day for one to two hours, experienced debilitating seizures every 10 days, had episodes of back pain where he could not move for five days, could not stand for more than 15 minutes and could not walk for more than 25 minutes.

So long as an administrative law judge gives specific reasons supported by the record, the court will not overturn her credibility determination unless it is patently wrong. Pepper v. Colvin, 712 F.3d 351, 367 (7th Cir. 2013). "Credibility determinations can rarely be disturbed by a reviewing court, lacking as it does the opportunity to observe the claimant testifying." Sims v. Barnhart, 442 F.3d 536, 538 (7th Cir. 2006).

The commissioner concedes that the administrative law judge erred by relying on plaintiff's failure to attend physical therapy as a reason to discount his credibility without considering evidence that plaintiff was unable to afford therapy. Murphy v. Colvin, 759 F.3d 811, 816 (7th Cir. 2014) (failure to follow prescribed treatment should not negatively affect credibility if there are good reasons the claimant did not fully comply with prescribed treatment). Further, as discussed above, the administrative law judge's "list" of plaintiff's ongoing activities lacks sufficient analysis to be of much use in the credibility determination. In spite of these deficiencies, however, I am satisfied that the administrative law judge's credibility assessment was not patently wrong because she cited other inconsistencies between plaintiff's alleged symptoms and the evidence that are supported by the record. For example, she noted that although records showed that plaintiff was seen in the emergency room for back pain, the doctors did not corroborate his testimony that he could not move

23

for five days; there was no support in the medical records that plaintiff had seizures when he took his medications regularly and he did not report any side effects to his doctor; plaintiff had engaged in fairly strenuous work activity after his alleged onset date; and he worked only sporadically prior to his alleged onset date, which called into question whether plaintiff's unemployment was the result of his medical impairments.  Because these reasons were adequate to support the administrative law judge's credibility determination, that determination does not require a remand.

ORDER

IT IS ORDERED that the decision of the defendant, Carolyn Colvin, Commissioner of Social Security, is REVERSED AND REMANDED for further proceedings consistent with this opinion.

Entered this 28th day of July, 2015.

BY THE COURT:

/s/
BARBARA B. CRABB
District Judge

24